UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SUNNYBROOK LP; | ) | |
| | ) | |
| Plaintiff, | ) | No.    18 CV 2193 |
| | ) | |
| vs. | ) | JURY TRIAL DEMANDED |
| | ) | |
| CITY OF ALTON, ILLINOIS, | ) | |
| An Illinois Municipal Corporation, | ) | |
| BRANT T. WALKER, individually and in | ) | |
| his official capacity as the Mayor of the | ) | |
| City of Alton, Illinois; | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff SUNNYBROOK, LP, by and through their undersigned attorneys, and as for their Complaint against Defendants CITY OF ALTON, ILLINOIS, an Illinois Municipal Corporation, and BRANT T. WALKER, individually and in his official capacity as Mayor of the City of Alton, Illinois, alleges as follows:

## I.    INTRODUCTION

1.    By this discrimination action, Plaintiff seeks redress for ongoing discriminatory practices by Defendant City of Alton, Illinois (referred to either as "the City" or "Alton"), Brant T. Walker, individually and as Mayor of the City of Alton, Illinois (referred to as " Walker"), and those working on behalf of the City or at the direction of Walker in actively delaying and precluding the development of the Community of Sunnybrook, an affordable multiple family housing development, in violation of the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Equal Protection clause of the Fourteenth Amendment of the United States Constitution.

Case No. 18-CV-                                                                    Page 1 of 26

2.      In early to mid-2017, Mr. Edward Hightower ("Hightower") of EBJJ, LLC ("EBJJ"), which is a partner of Sunnybrook LP, approached the City to solicit its support for a proposal to develop an affordable multiple family housing development with 40-units available for renting. The City and Walker were initially supportive and provided letters of support for several occasions.

3.      At all relevant times it was made clear to the City that the development would be financed through the federal Low Income Housing Tax Credit ("LIHTC") program, established in Section 42 of the Internal Revenue Code, 26 U.S.C. § 42, as administered by the Illinois Housing Development Authority ("IHDA"), and would be subject to the requirements of that program.

4.      Based on the demographics of eligible residents in the area, African-American households in Alton and the surrounding area would be more likely to qualify for housing at the Community of Sunnybrook than other community demographics.

5.      Overall, Plaintiff has engaged in a two-year long planning process to purchase the land, design the project, obtain the necessary financing, and meet every requirement of Alton's City Code.

6.      However, after Plaintiff met all of the specifications of the City and received approval from the Illinois Housing Development Authority for its LIHTC application, the City pulled its support for the Project in June 2018.

7.      Additionally, community opposition against the Project broke out in June 2018, based on discriminatory attitudes towards African-Americans and other groups based on race, with opponents suggesting that prospective tenants would increase crime, lower property values, and otherwise negatively affect the community.

8.      Upon information and belief, employees of the City, possibly at the direction of Mayor Walker, spread misinformation about the Sunnybrook Development throughout the public and encouraged members of the community to make online comments and otherwise generate opposition to the project.

9.      The City and Walker responded to this race-based opposition by:

a) Publicly retracting its support for the Sunnybrook Development by falsely claiming the developers misled Walker, with Walker claiming that he was led to believe the project would not include rental housing;

b) Engaging in a public dispute by press release with Plaintiff and its representatives in furtherance of the false claim that he was misled in an attempt to avoid humiliation with his supporters;

c) Contacting the director of IHDA and possibly other staff on dozens of occasions, as recently as Monday December 10, 2018, with the intention of interfering with the funding for the Sunnybrook Development;

d) Imposing heightened standards and procedures on Plaintiff's building permit application and treating Plaintiff unfairly with discriminatory intent;

e) Personally appearing at the Madison County Grants Committee to speak out against the project and rental housing in general, ultimately resulting in the loss of approximately $500,000.00 in Home funds for the project;

f) Attempting to change the R-4 Multiple Family zoning district in which the Sunnybrook Development would be located to specifically exclude multiple family housing units;

g) Denying the initial building permit request outright rather than merely seeking modifications to the submitted plans;

h) Ignoring and summarily dismissing the second building permit request;

i) Taking over five weeks to respond to the third building permit request without justification (the request is still pending);

j) Taking a meritless position in response to the initial building permit request by insisting Plaintiff file and have approved a subdivision plat prior to the issuance of a building permit, which was subsequently found to be unnecessary by the Honorable Judge David Dugan in the Circuit Court of Madison County, Illinois (2018-MR-844);

k) Indicating informally that Plaintiff would need to apply for a special use permit and/or a planned development procedure prior to the issuance of a building permit, which are also unnecessary and were never communicated to Plaintiff when the City provided multiple written assurances to IHDA that the existing R-4 Multiple Family Zoning designation was sufficient to permit the project; and

l) Taking any action necessary within its ability to delay, deny, and ultimately prevent the development of the Community of Sunnybrook.

10.     Through its actions with respect to the Sunnybrook Development, as described further herein, the City and Walker have engaged in a pattern or practice of unlawful discrimination and denied rights to a group of persons on the basis of race and color in violation of the Civil Rights Act of 1866, the Civil Rights Act of 1871, the Fair Housing Act, and the Fourteenth Amendment of the United States Constitution.

## II.    JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 3613.

12.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b), (c), because the events or omissions giving rise to the claims alleged herein occurred in the Southern District of Illinois and because the Defendant and the property at issue is situated in this judicial district.

## III.    PARTIES

13.    Plaintiff Sunnybrook, LP is an Illinois limited partnership organized and operating in Madison County, Illinois ("Sunnybrook").

14.    Sunnybrook is the developer of the "Community of Sunnybrook" – the proposed affordable housing development to be built in the City of Alton, which will consist of 10 multiple family structures totaling 40 units, to be available for leasing, and for individual sale after an initial 15-year period (hereinafter referred to as the "Sunnybrook Development" or the "Project.").

15.    The City is an Illinois Municipal Corporation located in the Southern District of Illinois.

16.    The elected officials for the City of Alton include a Mayor and a six-person City Counsel.

17.    City's current Mayor is Brant Walker, who is named as a defendant in both an individual and official capacity.

18.    City's current Aldermen consist of Brian Campbell, Carolyn MacAfee, Michael Velloff, Tammy Smith, Charlie Brake, and Dave Boulds.

## IV.   FACTUAL BACKGROUND

### A.   The City of Alton

19.     The City of Alton, located 25 miles north of St. Louis, Missouri, has a population of approximately 27,000 people.   A large portion of the City's economy involves the manufacturing industry along the Mississippi River.   As a result, there is a growing logistics industry throughout the City.

20.     According to the 2010 census data, of its 27,000 residents, approximately 67% are White and 30% are African-American, Hispanic or Latino, Asian, or American Indian (hereinafter "minorities").

21.     The median household income in Alton is approximately $37,000.00, with approximately 25% of the City's population living below the poverty level.

22.     The City's homeownership rate is approximately 60%, with whites comprising nearly 82% of the owner-occupied housing units.

23.     Conversely, minorities in Alton comprise only 18% of the owner-occupied housing units, but make up 38% of the City's renter population, with African Americans accounting for nearly 36% of all renters.

24.     In the past 15 years both the Alton Housing Authority and the Madison County Housing Authority have demolished several hundred low income based housing units in the City of Alton, while only replacing them with 80 or less such units.

25.     The City is currently engaged in an improper and unlawful citywide revitalization plan aimed at encouraging single-family homeownership and precluding the development of affordable multiple family housing units for renters, while imposing harsh and possibly unconstitutional restrictions on the owners and tenants of existing rental property.

Case No. 18-CV-

26.     As part of the City's policy and practices, the City causes, perpetuates, and reinforces housing segregation on the basis of race, color and national origin. With full knowledge and awareness that the minorities in Alton have a disproportionate need for affordable housing in the City, the City government maintains, and for many years has persisted in maintaining, an express and deliberate policy and practice of preventing such affordable housing to be constructed.

27.     There is a strong need for, and short supply of, housing that is affordable to low income households in Alton and the surrounding housing markets, which was the need recognized by IHDA in deciding to include Sunnybrook as part of its program.

### B.     The Sunnybrook Development

28.     The Sunnybrook Development will provide affordable housing to address the City's expanding logistics capabilities and labor force needs, specifically by providing an affordable fenced community to the significant percentage of workers earning between $12.00 and $20.00 per hour.

29.     A portion of the Sunnybrook Development will be financed through LIHTC, with 11 of the 40 units subsidized by project-based vouchers, with a percentage of those reserved for veteran applicants.

30.     In addition, the Sunnybrook Development seeks to attract future homebuyers to the area by providing an opportunity for future tenants and prospective persons to buy the Sunnybrook Development's units after the expiration of the initial 15-year period required by the LIHTC program.

### C.     Defendant's Initial Support for the Sunnybrook Development

31.     Throughout 2017, Plaintiff worked extensively in planning the Sunnybrook Development and actively sought input and support from the City.

32.     The City and Walker initially appeared supportive of the development. On June 15, 2017, Walker and EBJJ entered into a Memorandum of Understanding, which was prepared by the City, confirming an understanding that Sunnybrook was a LIHTC project, the units would be made available for sale after the 15-year LIHTC compliance period, the units would be available for tenants in the meantime, and the City was in support of the development. **(Exhibit 1)**

33.     The support of Walker was further confirmed by a letter to IHDA dated June 15, 2017 in which he expressed his "sincere support for the construction of the Community of Sunnybrook development" and "the City strongly supports this project and the efforts of the development team. Our community wants a quality, affordable option for families and looks forward to partnering with this development team to make this a reality." **(Exhibit 2)**

34.     As for zoning compliance, the City further expressed its support for the project by a letter dated June 15, 2017 from Zoning Administrator Greg Caffey to IHDA stating, "As noted above, the current zoning of R-4 Multiple Family Residential, will permit this proposed project." **(Exhibit 3)**

35.     In Mr. Caffey's letter of June 15, 2017 he affirmed to IHDA that the existing zoning permitted the proposed project "by right" and there were no special use requirements. Neither in this letter nor at any time until November 2018 did Mr. Caffey or the City take the position that a special use permit and/or a planned development procedure were required prior to the issuance of a building permit.

36.     The City reaffirmed that the existing zoning district was sufficient to permit the proposed project in a second, identical letter dated January 31, 2018 from Mr. Caffey to IHDA. **(Exhibit 4)**

37.     On February 23, 2018, Walker sent another letter of support to IHDA that was nearly identical to his letter of June 15, 2017, except this letter expressed his support for Plaintiff's request for Madison County HOME funds, which was a competitive grant the developers applied for with Madison County, Illinois.  **(Exhibit 5)**

### D.     Defendant Retracts Support for the Sunnybrook Development Following IHDA's Approval of Sunnybrook's LIHTC Application and Outbreak of Community Outrage

38.     On May 14, 2018, the Illinois Housing Development Authority approved the Sunnybrook Development's LIHTC application.

39.     On May 15, 2018 – one day after Plaintiff received its approval for LIHTC funding – IHDA personnel notified Plaintiff's representatives that Walker called to withdraw the City's support of the Sunnybrook Development. Walker did not extend a courtesy call to Plaintiff.

40.     A meeting was immediately sought with Walker and City officials to address their, by then, unspecified concerns and the reason for the sudden reversal in position after nearly a year of enthusiastic support.

41.     On May 17, 2018, a meeting was held with Walker and some department leaders and staff. Although the City and Walker had previously been fully supportive, Walker and other officials expressed sudden concerns about the development density, building and site layout, parking, and access, despite the fact the proposed development already met or exceeded the Alton City standards for R-4 zoning. The Director of Development & Housing for Alton, Mr. Greg Caffey, and Walker recommended the architectural design be changed from duplexes, stating they looked like "army barracks." Although the parties had been communicating for about a year, no such concerns were raised before IHDA approved the Sunnybrook Development's LIHTC application.

42.     Seeking a compromise, Mr. Caffey recommended changing the design from duplexes to townhouses. Ultimately, in response to the City's sudden negative feedback, the developers agreed to:

   a) Redesign the Project's original duplex design to a townhouse design;

   b) Decrease the size of the footprint for each building;

   c) Increase the side yard setbacks;

   d) Increase the number of parking spaces for units and the community building;

   e) Increase the width of the cul-de-sac's curb radius;

   f) Increase the width of the sidewalks; and

   g) Continue to work with the City to address any other concerns.

43.     Walker indicated at the May 17, 2018 meeting that he would agree to support these changes and that the parties should meet again on May 31. Ultimately, the redesigns requested by the City and agreed by Plaintiff in an effort to appease Walker have added approximately $500,000.00 to the total cost of the project.

44.     On May 31, the Sunnybrook team presented the design change to Walker, Mr. Caffey, the Police Chief, the Fire Chief, and two aldermen. During the meeting, Police Chief Jake Simmons stated "…we have a shit storm brewing within my police department and we will take a road trip to housing developments managed by The Laborers Home Development Corporation (LHDC)… we know that low income housing equates to crime…"

45.     Despite the Police Chief's comments, the meeting ended with an understanding that the Sunnybrook team could present at the Committee of the Whole meeting set for June 12, 2018. In the meantime, Chief Simmons or other City employees at Walker's direction toured other

housing developments managed by LHDC and spoke with area police departments in an effort to support the Chief's previous stated belief that low income housing equates to crime.

46.     The Sunnybrook development team appeared on June 12 for the meeting and attempted to make a presentation but was stopped by City Attorney Jim Schrempf. Mr. Schrempf indicated, before a room full of witnesses, that Walker and the City were in support of the Sunnybrook project once again and, as such, there was no reason for the Sunnybrook team to present. Satisfied, the Sunnybrook team made no further attempts to address the City Council (Walker was not present). As a parting comment, Mr. Schrempf stated "the Mayor wishes you luck."

47.     The next day, on June 13, 2018, Walker issued a press statement clarifying that he is not in favor of the development and asserted that he was misled about the nature of the project. He claimed he was never informed the units would be rentals or that vouchers would be available. Both of these statements are contrary to the provisions of the MOU signed by the Mayor in June 2017.

48.     Further, Walker apparently pressured Mr. Schrempf to publicly clarify to the newspaper that he never said Walker was in favor of it, but rather that Walker was *previously* in favor of it.

49.     On June 15, 2018, the City sent an additional letter to IHDA formally withdrawing all support for the Sunnybrook Development. The City's specific intent for drafting this letter was to stop Sunnybrook's funding, while conveying its discriminatory and unsupported position that the presence of low-income housing equates to higher crime and depressed property values.

50.     While the property values statement was included in the final version of the letter, the City apparently removed any reference to higher crime. Nonetheless, the inclusion of this

reference in the draft version reflects the true discriminatory position of the City and Walker.  A true and correct copy of the City's June 14, 2017 Email, June 6, 2018 Draft Letter, and June 15, 2018 Letter are attached and incorporated hereto as **(Group Exhibit 6)**

51.     According to the final version of the City's June 15, 2018 Letter, which was signed by Walker, the City Council, Mr. Caffey, the Fire Chief, and the Police Chief, the City could no longer support the Sunnybrook Development because of its LIHTC financing and allegations that subsidized rental developments "would depress the value of existing single-family homes and declining property values will reduce the city's revenue forcing reductions to vital services including public safety." *(Exhibit 6).*

52.     Walker's press release and other public statements made contemporaneously with the City's retraction of support spurred several Alton City residents to initiate a campaign to oppose and stop the Sunnybrook Development. Upon information and belief, this effort was directly encouraged by City officials and Walker.

53.     Opponents organized and disseminated information about the Sunnybrook Development via Facebook and an IPetition entitled "Citizens of Alton Against Sunnybrook Development" (the "Petition").

54.     A significant portion of comments made in support of the Petition and against the Sunnybrook Development are disparaging towards future residents of the Project, contain racist undertones, and were similar to the comments made by Police Chief Simmons during the meeting of May 31.  Some of the comments include the following:

a)  "This is going to be yet another housing projects that will bring more low life
    thugs and crime to Alton…where is the mayor on this?? This needs to be

stopped! You know damn well Edwardsville would or did turn this crap down. Alton doesnt need more low income housing and def no more damn crime!"

b) "Our area needs no more reason for crime and poverty."

c) "Alton does not need another drug housing complex"

d) "Alton has a long history of Housing Projects, and the citizens are well aware of the Drugs and crime that are inherent with them."

e) "We do not need more housing just for it to be torn apart by violence, murder, and drugs. What we need to do is revamp the current housing, homeless shelters, and other resources, by ensuring it is a safe and healthy environment for those truly in need."

f) "we need to stop urban plight, not enlarge it!"

g) "We are not the dumping ground."

h) "I have seen the effects of low income housing in the school district. Our future needs to be preserved. We do not need anymore troubled children from low income housing in our schools."

i) "No more perpetuating the cycle"

j) "No more handouts"

k) "We have learned that these 'reservations' where we put people off away from us become a blight on the community. We tore them down a few years ago, because we agreed they demeaned a segment of the population, who deserved the chance to live in and someday own a single family home. Now, for profit, we are attempting to return to this 'storage' facility for the less fortunate? Bad idea. If Ed thinks it's a good idea, let him build it in Edwardsville."

Case No. 18-CV-

55.     As evidence of the effect of the Mayor's position on the public outcry against the project, on July 5, 2018 an Alton resident named John Mazzocchio sent a letter to the editor of the Alton Telegraph entitled "Why I support Mayor Walker's stance on Sunnybrook" in which he stated:

> " I am writing in support of Mayor Walker's stance against the proposed housing project for Alton. For too long, Alton has been used as dumping ground for subsidized housing. The four projects we're presently saddled with have been hotbeds of crime and public disorder. You need look no further than the recent news about Belle Manor for an illustration. There were nearly 300 calls for police service in just one year. This anarchy is straining the resources of our police and fire departments nearly to the breaking point. Why would we want more of the same? In addition, the prevalence of housing projects has lowered the status of our demographics. In a word, we have too many people on the dole who are work shy, add nothing to the economy, and don't care about what happens to our city. Consequently, businesses don't want to locate here for these reasons — just look at the empty stores in the mall. I say let's put this project in Edwardsville. There are more jobs there, better schools, and a police force that's not yet overtaxed."

56.     As indicated by the above comments, many in the community voiced opposition to the project following Walker and the City's efforts to spread misinformation about the project, comparing it to a public housing project, suggestions that it would lead to more crime as indicated by Chief Simmons, and that the potential residents of Sunnybrook were essentially dependent on the government, took "handouts" and were on the "dole".

57.     Upon information and belief, City officials or employees also told members of the public that "North County", "North St. Louis", or "East St. Louis" residents would move to Alton

to live at Sunnybrook. All three of these communities or areas are known to have significant African-American populations.

58.    Feeding on, while fueling, the community outrage, Walker issued another public statement that was previously unaware that the project involved subsidized housing when he first signed the Memorandum of Understanding in June 2017. The *RiverBender* published the Mayor's statement in an article on June 14, 2018 titled "Alton Mayor Walker gives reasons why he doesn't support Community of Sunnybrook at this time."

59.    Among the reasons for Walker's stated reversal of position was "Alton is nearly 50 percent rental property and there is adequate affordable rental housing available. My administration, and the City Council, recently enacted a landlord licensing policy to ensure that rental property in our city is safe and does not diminish the property values of existing single-family homeowners. Because the latest version of the proposal to develop the Community of Sunnybrook includes subsidized, multiple family rental units at the expense of single-family homeownership, I cannot support it at this time." (underlined for emphasis).

60.    As indicated in Walker's own words, he has adopted an unlawful policy of opposing the creation of low-income housing opportunities in the City of Alton, specifically of multiple family units that are subsidized, in favor of single-family residential.

61.    Walker's clearly stated position, which is also the position of the City, is to transform Alton from a community with a history of abundant housing opportunities for low-income individuals, many of whom are minorities, into a City with a government that seeks to deny, exclude, and ultimately displace those individuals away from Alton by not permitting new rental, low-income housing opportunities.

62.     Even worse, Walker and the City have engaged in discriminatory conduct in furtherance of this goal by fostering the spread of misinformation about Sunnybrook. Such efforts are designed to excite a base of residents otherwise disposed to embrace, and fear, a false correlation between the development of low-income housing and an increase in crime as stated by Chief Simmons, and the diminution of single-family property values as stated by Walker.

### E.     Defendant Considers Amending its Zoning Code to Exclude Multiple Family as a Permitted Use in the City of Alton

63.     Shortly after the City's withdrawal of support, the City's Plan Commission, at the direction of Walker, posted notice of its intention to amend its zoning code as it pertained to multiple family residential districts. **(Exhibit 7)**

64.     As indicated, Walker and the City attempted, quite literally, to remove multiple family as a permitted use in the multiple family zoning district, thereby stopping the Sunnybrook development and eliminating the possibility for future multiple family development anywhere else in Alton, which was consistent with Walker's publicly stated housing goals.

65.     Further, Walker and the City attempted to modify the purpose of the R-4 zoning district. At present, the purpose for an R-4 zoning district in the Code of Ordinances for Alton is, in part: "A. Purpose: The purpose of the R-4, multiple-family residential district, is to provide areas for multiple-family residential uses of an urban character. It is further intended to provide for other uses which are customarily found with and are not detrimental to multiple-family residences...."

66.     The proposed change would have removed any reference to the term "urban character" and instead read: "A. Purpose: The purpose of the R-4, multiple-family residential district, is to provide for uses which are customarily found with and are not detrimental to multiple-

family residences and to allow for the possibility of additional multiple-family residential uses within the R-4 district...."

67.     Further, and despite the stated intention "to allow for the possibility of additional multiple-family residential uses within the R-4 district", by removing multiple family residential as a permitted use in the R-4 it does not appear how, exactly, multiple family uses could be expanded going forward anywhere in the City of Alton.

68.     Importantly, the intentional removal of "...*to provide areas for multiple-family residential uses of an urban character.*" further evidences the City's intention to transform Alton into a community that, quite literally, does not provide areas for multiple family housing of an urban character. Instead, Walker and the City only want suburban style single-family residences that will attract individuals who can afford such housing, and to exclude those who cannot.

69.     Plaintiff did considerable research on this issue and emailed Mr. Schrempf federal cases, including one where a city refused to rezone a property to accommodate a project. The Seventh Circuit found a racially disproportionate impact and indicated there would be a FHA violation. Ultimately, the case settled, the property was rezoned, and the project moved forward. By contrast, in this matter Plaintiff already has the necessary zoning but the City was trying to change the permitted uses of an R-4 as a way of stopping the project.

70.     After threatening litigation and pointing out the obvious civil rights and FHA violations, the City decided to postpone consideration of these changes indefinitely. However, the attempt to change the R-4 zoning district was clearly directed at this project given the timing of its consideration, and further demonstrates the continuing efforts by Walker and the City to stop Sunnybrook using any available resource as indicated below.

Case No. 18-CV-                                                      Page 17 of 26

**F.     Defendant Interfered with Plaintiff's Request for Madison County Home Funds**

71.     On June 20, 2018, the Madison County Grants Committee held a public meeting during which it considered three projects for grants, including one in Granite City, Highland, and the Sunnybrook project in Alton. As indicated above, Walker previously sent a letter to IHDA expressing support for this project receiving Home funds.

72.     In advance of this meeting Walker called the Chair of the Grants Committee, County Board Member Clint Jones, several times to express his strong, and reportedly angry, opposition to Sunnybrook.

73.     At the meeting on June 20, Walker, nearly the entire City Council and several of Walker's supporters attended to show opposition to the project.

74.     During his public remarks as reflected in the official minutes from the meeting, Walker stated, in part, "He said over 50% of Alton is rental property and they do not need more rental property." **(Exhibit 8)**

75.     As a result of Walker's comments, his direct contact with committee members, and the requirement that community support be obtained for consideration to receive Home funds, the Grants Committee ultimately decided not to award any funds to Sunnybrook. This decision cost Plaintiff nearly $500,000.00 in anticipated funding that would not have been expected or even sought had Walker been honest about his lack of support for Sunnybrook from the beginning.

**G.     Defendant Denies Plaintiff' Building Permit Application and All Sunnybrook Development Stalls Due to Defendant's Creation of New Procedures and Obstacles**

76.     After submitting its initial building permit application on July 31, 2018, the City engaged an outside engineering consultant to review the application. On August 21, 2018, the City issued a letter with the engineer's extensive comments denying Plaintiff's initial building permit application outright. **(Exhibit 9)**

77.     Most of the concerns raised by the engineer were technical in nature and are customary for this type of project. However, as part of its denial, the engineer noted that Plaintiff was required to submit a subdivision plat for the Sunnybrook Development for the City's approval.

78.     Although Plaintiff never announced an intention to subdivide the land into individual parcels, the City made the assumption this would be necessary given Plaintiff's stated intention to IHDA that it would make the units available for sale in 15 years.

79.     Such a platting requirement is not required under the Alton City Code and is only required prior to a sale when someone intends to sell only a portion of an existing tract of land. Furthermore, it does not appear in the City's Code or Ordinances that a subdivision plat must be approved *prior* to the issuance of a building permit, even when it is the intention of the developer to subdivide.

80.     Further, upon information and belief, the City has never required a similar platting requirement for any prior multiple family residential community.

81.     Further still, upon information and belief, the engineer engaged by the City did not include the subdivision plat requirement as part of his initial feedback and only added it to his report at the request of the City or its legal counsel.

82.     The City's continued insistence that Plaintiff submit a preliminary plat for its approval was just the latest example of the City trying to force Plaintiff into a position where it has to ask the City for approval of some aspect of the project so the City would then be in a position to deny it and stop the project.

83.     After Plaintiff's demands that the City concede the point were ignored, Plaintiff filed a lawsuit against the City in the Circuit Court of Madison County bearing a case number of 2018-MR-844, which remains open and pending.

84.     On December 12, 2018, the Court ruled, after the City finally conceded, that the filing of a subdivision plat was not necessary as Plaintiff has stated no intention to subdivide and, in fact, has stated the opposite. Plaintiff has indicated it will simply convert the project into a condo association in 15 years, sell the units to tenants in good standing, and eventually turn over control of the development to an association, none of which will require a subdivision plat.

85.     Having lost this dispute after adopting one meritless position, the City is now posturing as though it will soon require yet another unnecessary obstacle by requiring Plaintiff to file and have approved a planned development procedure, given the project is to contain more than two structures.

86.     A planned development procedure is appropriate when a proposed development has a mixed use, often consisting of both residential and commercial/retail that does not fit squarely within any existing zoning district.

87.     As indicated above, and as confirmed by the City's Zoning Administrator by letter on at least two occasions, the existing zoning district of R-4 is sufficient to permit the proposed project.

88.     The City has also postured as though it may require Plaintiff to seek a special use permit given its stated intention to develop Sunnybrook into a condo in approximately 15 years. The reported basis for this is that since the City's Code does not provide any process for the approval of condos it somehow must be sought in the form of a special use permit.

89.     Again, all of these continuing obstacles are designed to force Plaintiff into a position where it must seek the approval of some aspect of the project from the City which it can then deny and stop the project for good.

90.     Further, Walker and the City know Plaintiff is under a timetable with IHDA to obtain a building permit to quality for additional funding, and to retain the existing funding it has already been awarded. For this reason, they are doing whatever necessary to delay and ultimately deny the issuance of a building permit for Sunnybrook.

91.     As of this date, the City has refused to issue a formal response to Plaintiff's most recent building permit request for nearly six weeks, despite Plaintiff's engineers having been supplied a copy of the City's preliminary comments on November 29, 2018 by the City's engineer.

92.     The City and Walker are aware that if the building permit is not issued soon Plaintiff will lose on the opportunity to receive additional funding from IHDA to replace the $1,000,000.00 it has lost through the loss of the Home funds and the increased costs of the project in a vain attempt to appease Walker and the City.

93.     The City's discriminatory application of its zoning and subdivision codes were in response to community opposition based on the race and racial stereotypes of prospective tenants of affordable housing, and have the intent and effect of discriminating against prospective minority tenants and residents of Alton by delaying and ultimately stopping the Sunnybrook Development.

94.     Through its actions with respect to Sunnybrook Development, Walker and the City engaged in a practice or pattern of unlawful discrimination and denied rights to groups of persons on the basis of race and color.

### H.    The Initial Support of Walker and the City was Disingenuous and Other Discriminatory Actions by the City Relating to Rental Housing

95.     Walker stated basis for changing his position from one of strong support to strong opposition was that he was misled by Plaintiff, stating he had no idea the project would include vouchers or rentals.

Case No. 18-CV-

96.     He claims that upon receiving a copy of Plaintiff's IHDA application he learned of the project's true nature, felt misled, and now is doing everything possible to stop Sunnybrook.

97.     The provisions of the MOU signed by Walker on June 15, 2017 clearly contradict the position that he was unaware that the project would contain rental housing and vouchers.

98.     Unless Walker simply did not read what he was signing, there is no way he could have misinterpreted the MOU.

99.     In reality, Walker has told many people that he was never really in favor of the project and assumed that Plaintiff would never be awarded the funding from IHDA.

100.    Reportedly, Walker only wanted to appear as though he has doing a favor for Hightower, who is the owner of Sunnybrook LP partner EBJJ and is a well-known and highly respected leader in the greater Madison County community.

101.    Thereafter, when IHDA awarded the funding on May 14, 2018, Walker panicked and looked to contrive a reason for the reversal of his previous support.

102.    Rather than simply state that he changed his mind, he claimed he was misled by Hightower and the other developers, and is now using all of his resources and power as a government official to stop Plaintiff's low-income housing development.

103.    Simultaneously, Walker is carrying out his plan to transform Alton from a community with historically abundant low-income housing opportunities into a community that prevents the creation of such opportunities while excluding and displacing the individuals in Alton who would otherwise qualify, many of whom are minorities.

104.    In furtherance of this effort, the City at Walker's direction recently passed new ordinances creating a program whereby owners of rental property must register with the City before renting their homes or apartments to tenants.

105.    Part of the new program provides for the City's code enforcement officer to inspect all rental properties before they are rented.

106.    Also part of the new program and simultaneous with its implementation, Walker appointed a new code enforcement official, Gary Cranmer, who is a recently retired Alton police lieutenant.

107.    Further, the City is apparently requiring that an on-duty police officer with the Alton Police Department accompany the new code enforcement official to all inspections, allegedly for safety reasons.

108.    It is believed that the involvement of the police in these rental home inspections is a way for the police to get around the Fourth Amendment and conduct a search of rental housing in Alton without first getting a warrant or consent.

109.    By requiring homeowners to schedule an inspection before renting their property while inserting law enforcement into the process, the City and Walker are essentially forcing these owners to consent to a police search of the premises if they want to use their properties for rental purposes.

110.    This new process and the involvement of police is yet another action in a pattern of continuous discriminatory activity by the City to reduce rental, low-income housing opportunities and ultimately to exclude those individuals from Alton who require affordable rental housing.

## COUNT ONE
### (Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*)

111.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

112.    By the conduct set forth above, the City of Alton has (1) made dwellings unavailable or denied dwellings to persons because of race or color, in violation of 42 U.S.C. §

3604(a); and (2) interfered with persons in the exercise or enjoyment of rights granted or protected by 42 U.S.C. § 3604, in violation of section 3617.

113.   City of Alton's discriminatory conduct or actions as set forth above were intentional, willful, and taken in disregard for the rights of others.

114.   Plaintiff is an aggrieved party within the meaning of 42 U.S.C. § 3602(i) and section 3613(a). On information and belief, there are others who are aggrieved persons who have been or will be injured by defendant's actions.

## COUNT TWO
### (Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981)

115.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

116.   By the conduct set forth above, the City of Alton has deprived Plaintiff of their right to make and enforce contracts on the basis of race, color, and national origin in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## COUNT THREE
### (Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982)

117.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

118.   By the conduct set forth above, the City of Alton has deprived Plaintiff of their right to purchase, lease, or otherwise hold or convey property, on the basis of race, color, and national origin in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1982.

## COUNT FOUR
### (Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983 and
### the Fourteenth Amendment to the Constitution of the United States)

119.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

120.   By the conduct set forth above, the City of Alton's discriminatory customs, patterns, practices, and usages in contravention of Plaintiff' constitutional and federal statutory

rights motivated by malice and/or callous disregard for the rights of Plaintiff, deprive Plaintiff of their right of equal access to housing under color of law in violation of the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983 and their rights under the Equal Protection Clause of the United States Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a)      Declaring Defendants' acts, practices, and policies complained of herein violated and violate Plaintiff's rights as secured by the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Civil Rights Act of 1866, 42 U.S.C. § 1982; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Equal Protection clause of the Fourteenth Amendment to the United States Constitution;

b)      Prohibiting Defendants, its agents, employees, successors, assigns, and those acting in active concert, combination or participation with them, from discrimination on the basis of race or from engaging in any policies or practices that deprive Plaintiff of their rights secured by any and all of the statutes in sub-paragraph (a) above, including among other things:

c)      Requiring Defendants to permit the Sunnybrook development in Alton, Illinois and to otherwise refrain from engaging in further actions of unlawful interference with this or any future low-income housing development by Plaintiff;

d)      Requiring Defendant to take affirmative steps to comply with the Fair Housing Act, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate the effects of its unlawful housing practices as described herein;

e)      Awarding actual and punitive damages pursuant to 42 U.S.C. § 3613(c)(1) to all aggrieved parties harmed by Defendant's discriminatory practices;

f)      Awarding Plaintiff their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

g)      Ordering such other relief as the interests of justice may require.

Respectfully submitted,

HEPLERBROOM, LLC

By:     /s/   Andrew K. Carruthers
        Andrew K. Carruthers, #6289184
        Amanda R. McQuaid, #6324336
        130 North Main Street
        P.O. Box 510
        Edwardsville, IL 62025
        Tel. (618) 307-1104
        Fax (618) 656-1364
        Ac1@heplerbroom.com
        *Attorneys for Plaintiff*

Case No. 18-CV-