IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUNNYBROOK LP,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF ALTON, ILLINOIS, an Illinois Municipal Corporation, and BRANT T. WALKER, individually and in his official capacity as the Mayor of the City of Alton, Illinois,<br><br>      Defendants. | Case No. 3:18-CV-2193-NJR-RJD |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This case is before the Court on the Motion to Dismiss filed by Defendants City of Alton, Illinois, and Brant T. Walker (Doc. 17), as well as the Motion to Strike filed by Plaintiff Sunnybrook LP (Doc. 28). For the reasons set forth below, both motions are denied.

## BACKGROUND

The Court accepts the following facts as true for purposes of Defendants' motion to dismiss. The City of Alton is home to approximately 27,000 residents, 67 percent of which are White and 30 percent of which are African-American, Hispanic or Latino, or American Indian (Doc. 7, p. 6). The median household income is $37,000; approximately 25 percent of the population lives below the poverty level (*Id.*). While about 60 percent of Alton residents own their homes, most of those people—82 percent—are White (*Id.*). Minorities, on the other hand, make up 38 percent of Alton's renter population (*Id.*).

Plaintiff Sunnybrook LP is the developer of the "Community of Sunnybrook," a proposed affordable housing development to be built in the City of Alton (*Id.*, p. 5). The project consists of 10 multiple family structures totaling 40 units. A portion of the development project would be financed through the federal Low-Income Housing Tax Credit ("LIHTC") program, with 11 units subsidized by project-based vouchers and a percentage of those reserved for veteran applicants (*Id.*). After a 15-year period of leasing the units, as required by the LIHTC program, the units would be available for sale, thereby increasing home ownership (*Id.*).

In early to mid-2017, a partner of Sunnybrook approached the City of Alton and its mayor, Brant Walker, for support for the Sunnybrook development (*Id.*, p. 2). Defendants initially appeared supportive of the development and signed a Memorandum of Understanding that confirmed Sunnybrook was a LIHTC project and the units would be available for rent for 15 years (*Id.*, p. 8). Just one day after Sunnybrook received approval for LIHTC funding, however, Walker withdrew the City's support for the development (*Id.*, p. 9). A meeting was held on May 17, 2018, during which Walker and other officials expressed concerns about the development density, building and site layout, parking, and access, even though the project already met or exceeded the City's zoning standards (*Id.*). In response to the City's concerns, Sunnybrook agreed to make major changes to the development, including smaller structural footprints, bigger side yards, more parking, and wider sidewalks. These modifications added about $500,000 to the cost of the project (*Id.* at p. 10).

On May 31, 2018, the Sunnybrook team presented the design change to Walker,

the police chief, the fire chief, and two aldermen (*Id.*). During the meeting, the police chief commented that "low income housing equates to crime." (*Id.*). Nevertheless, the parties agreed that the Sunnybrook team would present to a committee consisting of all aldermen in June (*Id.*).

On June 12, 2018, the Sunnybrook development team appeared at the meeting of City aldermen to present the development (*Id.*, p. 11). The City Attorney, however, indicated that Walker and the City supported the project and there was no need for the team to present at the meeting (*Id.*). Accordingly, the development team did not present the development (*Id.*). The following day, Walker issued a press statement retracting support for the Sunnybrook project, stating he was misled about the project and claiming he never knew the units would be for rent or that vouchers would be available (*Id.*).

On June 15, 2018, the City sent a letter to the Illinois Housing Development Authority formally withdrawing support for Sunnybrook (*Id.*). Within the letter, Walker and other City officials stated they no longer supported the project because of its LIHTC financing and allegations that subsidized rental developments "would depress the value of existing single-family homes and declining property values will reduce the city's revenue forcing reductions to vital services including public safety." (*Id.*, p. 12; Doc. 7-8). According to Sunnybrook, Walker's comments spurred several Alton residents to start a campaign against the Sunnybrook development on Facebook and IPetition (*Id.*). Some of the comments made against the development allegedly have racist undertones (*Id.*).

Sunnybrook alleges that the City and Walker then attempted to amend the zoning code to remove "multiple family" as a permitted use in the multiple family zoning

district, which would stop the Sunnybrook development and eliminate the possibility for future multiple family development anywhere else in Alton (*Id.*, p. 16). The City, however, has postponed consideration of these changes (*Id.*).

On June 20, 2018, the Madison County Grants Committee held a public meeting to consider three projects for grants, including the Sunnybrook project (*Id.*, p. 18). Sunnybrook alleges Walker called the Committee Chair and expressed his strong opposition to the Sunnybrook development. Walker also appeared at the public meeting and expressed his opposition. Sunnybrook alleges that, as a result of these actions, the Grants Committee did not award any funds to Sunnybrook—costing Sunnybrook nearly $500,000 in anticipated funding (*Id.*).

On July 31, 2018, Sunnybrook submitted its initial building permit application (*Id.*). The City employed a third-party engineering consultant to review the application (*Id.*). On August 21, 2018, the City issued a letter denying Sunnybrook the building permit, supplemented with the engineer's comments (*Id.*, p. 18-19). Particularly, the engineer noted Sunnybrook's failure to submit a subdivision plat for the project, assuming such a plat would be required when the units become available for sale in 15 years (*Id.*, p. 19). Generally, a plat is only required under the Alton City Code prior to the sale of a portion of the land (*Id.*). The City has never required such an advanced plat from similar projects (*Id.*). Sunnybrook alleges on information and belief that the engineer did not list the plat requirement in his initial feedback but added it later upon the City's request (*Id.*).

On November 5, 2018, Sunnybrook filed suit in the Circuit Court of Madison County, Illinois, against the City of Alton (*Id.*). On December 12, 2018, the Madison

County court found the filing of a subdivision plat unnecessary because Sunnybrook can convert the property through a condominium association in 15 years (*Id.*, p. 20). And on June 5, 2019, the City of Alton was ordered to grant the pending building permit for the Community of Sunnybrook by May 7, 2019. *Sunnybrook LP v. City of Alton, Illinois*, No. 2018MR884 (Madison Cty., Ill. June 5, 2019). The court again directed the City to issue the permit on June 27, 2019, noting that it would impose sanctions of $500 per day if the permit was not issued as directed. *Id.* Alton filed a motion to reconsider the court's June 5, 2019 Order, which was denied on August 1, 2019. *Id.* The City has now appealed the trial court's decision, and that appeal remains pending. *Id.*

Despite the Illinois state court's ruling, Sunnybrook alleges the City of Alton may now require Sunnybrook to have an approved "planned development procedure," which is required when a proposed development has a mixed use (*Id.*). It may also require Sunnybrook to obtain a special use permit to convert the units into condos in 15 years (*Id.*). Sunnybrook asserts the continuing obstacles are designed to force it to seek approval from the City, so the City can then deny the request and stop the project for good.

Sunnybrook claims that Walker and the City of Alton are acting to preclude the development of multiple family housing units for renters with full knowledge that minorities in Alton have a disproportionate need for affordable housing in the City. It further claims that Defendants' actions constitute a pattern or practice of unlawful discrimination against groups of persons on the basis of race and color.

Sunnybrook filed its Complaint in this action on December 19, 2018, followed by an Amended Complaint on December 21, 2018 (Doc. 7). In Count 1 of its Amended

Complaint, Sunnybrook alleges Defendants violated the Fair Housing Act, 42 U.S.C. § 3601, *et seq*. by making dwellings unavailable or denying dwellings to persons because of their race or color and interfering with persons in the exercise or enjoyment of rights granted or protected by 42 U.S.C. § 3604. It further alleges Defendants' discriminatory housing policies were intentional and willful, and that Defendants have put policies into practice to prevent further development of housing opportunities. Sunnybrook alleges it is an aggrieved party within the meaning of 42 U.S.C. § 3602(i) and 3613(a). In Count 2, Sunnybrook alleges the City of Alton has deprived it of its right to make and enforce contracts on the basis of race, color, and national origin in violation of the Civil Rights Act, 42 U.S.C. § 1981. In Count 3, Sunnybrook claims the City of Alton has deprived it of its right to purchase, lease, or otherwise hold or convey property, on the basis of race, color, and national origin in violation of the Civil Rights Act, 42 U.S.C. § 1982. Finally, in Count 4, Sunnybrook claims the City of Alton's discriminatory customs, patterns, practices, and usages have deprived it of its right to equal access to housing under color of law, in violation of the Federal Civil Rights Act, 42 U.S.C. § 1983 and under the Equal Protection Clause of the U.S. Constitution.

As relief, Sunnybrook asks the Court to enter judgment (1) declaring that Defendants' acts, practices, and policies have violated and continue to violate its rights under the Fair Housing Act, the Civil Rights Act, and the Equal Protection Clause of the Fourteenth Amendment; (2) prohibiting Defendants from discriminating on the basis of race or engaging in policies and practices that deprive Sunnybrook of its rights; (3) requiring Defendants to allow the Sunnybrook development in Alton and to

otherwise refrain from engaging in further actions of unlawful interference with this or any future low-income housing development by Sunnybrook; and (4) requiring Defendants to take affirmative steps to comply with the Fair Housing Act, including steps necessary to prevent the recurrence of discriminatory conduct in the future and eliminate the effects of its unlawful housing practices. It also seeks an award of actual and punitive damages, including but not limited to the $500,000 in funds lost due to Defendants' interference and the $500,000 in additional development costs to be incurred as a result of the modifications demanded by Defendant Walker, as well as reasonable attorney's fees and costs.

On February 14, 2019, Walker and the City filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12 of the Federal Rules of Civil Procedure (Doc. 17). Defendants argue Sunnybrook lacks standing to bring its claims, as there is no active case or controversy. Alternatively, Defendants argue the Court should abstain from exercising jurisdiction. Sunnybrook filed a response in opposition on March 14, 2019 (Doc. 24). On March 21, 2019, Walker and the City filed a reply to Sunnybrook's response (Doc. 27). Sunnybrook filed a motion to strike the reply on March 22 (Doc. 28). On March 26, Walker and the City filed a response to the motion to strike (Doc. 30).

## LEGAL STANDARD

To survive a motion seeking dismissal under Rule 12(b)(1), a plaintiff must "clearly allege facts demonstrating each element" required to establish standing. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Whether a defendant argues that a complaint fails to (1) properly state a claim, or (2) properly plead the elements of standing, courts apply

the same analysis. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015). The factual allegations contained within a complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007) (internal citations omitted); *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[T]rial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."). The court may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Aku v. Chicago Bd. of Educ.*, 290 F. Supp. 3d 852, 859 (N.D. Ill. 2017) (quoting *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)).

## DISCUSSION

### I. Standing

The plaintiff, as the party invoking the Court's jurisdiction, bears the burden of establishing that all jurisdictional requirements are met. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). This includes standing under Article III of the Constitution, which confines federal courts to adjudicating only actual cases or controversies, as well as prudential limitations. *Id.*

With regard to Article III standing, a plaintiff must show (1) injury in fact, meaning an invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendant's

actions; and (3) that a favorable decision is likely to redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Second, the injury must be fairly traceable to the challenged conduct. *Id.* Third, the injury must be likely to be "redressed by a favorable decision." *Id.* at 561.

"[T]he exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions." *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *United States v. Stoller*, 772 F. App'x 351, 352 (7th Cir. 2019) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Moreover, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy" regarding prospective equitable relief. *Tobin for Governor v. Illinois State Bd. of Elections*, 268 F.3d 517, 528 (7th Cir. 2001) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). "A plaintiff's speculation that he may suffer the same injury at some time in the future is insufficient to establish standing." *Id.*

The Supreme Court also has recognized prudential limits on the parties that may invoke the courts' powers. As relevant here, the Supreme Court has held that, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 746 (7th Cir. 2007) ("subject to certain exceptions, one cannot sue in a federal

court to enforce someone else's legal rights"). "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.* at 500.

A. Article III Standing

In this case, Defendants argue that Sunnybrook lacks Article III standing because there is no actual case or controversy and, thus, it has suffered no redressable injury. Defendants assert that there is no indication in the complaint that Sunnybrook has filed a request for zoning or building permits with the City of Alton, nor is there any allegation that the City has issued a final denial of Sunnybrook's plans. Rather, as demonstrated by the complaint and the pleadings filed in the state court case, the application for development was not filed by Sunnybrook and the building permit has not been finally approved or denied. Furthermore, the administrative process is still ongoing, so the case is not ripe for adjudication.

The Supreme Court has held that real estate developers like Sunnybrook who have contracted to purchase land have a stake in the outcome of the controversy such that they meet the requirements for constitutional standing. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 261 (1977). In *Arlington Heights*, a low-income housing developer—after meticulous planning—was found to have suffered a sufficient economic injury from the village's refusal to rezone. *Id.* The Supreme Court found that the thousands of dollars expended in planning for the development would be rendered valueless if rezoning was not granted. *Id.* at 261-63. Although the Supreme

Court acknowledged that injunctive relief through rezoning would not guarantee the project would be completed and that "all housing developments are subject to some extent to similar uncertainties," the level of specificity and detail in the developer's plans trumped the speculative nature of the injury. *Id.* at 262. Furthermore, the developer's "interest in making suitable low-cost housing available where such housing is scarce" was, in itself, a sufficient interest to demonstrate standing. *Id.* at 262-63. *See also United States General, Inc. v. Joliet*, 432 F. Supp. 346, 350-51 (N.D. Ill. 1977) (developer satisfied constitutional standing requirements when it expended time and money in planning and was denied zoning permits).

Similar to *Arlington Heights*, Sunnybrook alleges that it has added more than $500,000 in modifications to its plans to appease the City and Walker. It also alleges that it lost out on $500,000 in anticipated funding and that the project has been delayed due to Defendants' discriminatory acts, which could cause Sunnybrook to lose out on additional funding from the Illinois Housing Development Authority. If the Sunnybrook development is not approved, Sunnybrook's planning expenses will be lost. Accordingly, the Court finds that Sunnybrook has suffered a sufficient injury to satisfy the injury-in-fact requirement under Article III. Moreover, the injury is traceable to Defendants' alleged conduct and is likely to be redressed by a favorable decision in the form of monetary damages. Therefore, Sunnybrook has adequately demonstrated Article III standing to pursue its claims.

Defendants also briefly argue that Sunnybrook's claims are not ripe because there has not been a final decision on the pending building permit application. Sunnybrook

asserts, however, that its complaint is not limited to Defendants' failure to timely issue the building permit. Rather, it alleges Defendants' actions have violated its statutory and constitutional rights, in addition to causing money damages.

The requirement that a case be ripe for review stems from Article III's case-or-controversy requirement, "as claims premised on uncertain or contingent events present justiciability problems." *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 676 (7th Cir. 2019). "The doctrine's underlying objective is to avoid premature adjudication and judicial entanglement in abstract disagreements." *Id.*

Here, Sunnybrook's claims are ripe because it claims Defendants' actions and inaction have violated its statutory and constitutional rights, causing substantial money damages and a delay in the development of the project. Moreover, Sunnybrook claims it has lost out on at least $500,000 in funding due to Defendants' actions. These issues are not contingent future events, but rather are ripe for judicial determination.

B.    <u>Real Party in Interest</u>

Defendants also mention prudential standing but then analyze the doctrine under Rule 17(a)(1), which requires that an action be prosecuted in the name of the real party in interest. FED. R. CIV. P. 17(a)(1). As relevant here, prudential standing encompasses the principle that, "subject to certain exceptions, one cannot sue in a federal court to enforce someone else's legal rights." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 746 (7th Cir. 2007). As recognized by the Seventh Circuit, "Rule 17's real-party-in-interest requirement [is] essentially a codification of this nonconstitutional, prudential limitation on standing." *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008).

Defendants contend that Sunnybrook is not the real party in interest because Sunnybrook does not own the property, the entity that signed the Memorandum of Understanding with Defendant Walker is not a party to this case, Sunnybrook did not file a building permit application, and it has not been denied any permits or applications. Defendants note that the land at issue is owned by Keller Construction and that "EBJJ, LLC" holds an option to purchase it. Thus, if any claim exists, it does not belong to Sunnybrook.

In response, Sunnybrook argues that it has a clear interest in the project by virtue of its status as a contract-purchaser and developer. Sunnybrook notes that it is the developer of the Community of Sunnybrook and, while Keller Construction currently owns the land for the project, after completion of the development, it will own the real estate and manage the community (Doc. 24-1). Other third parties involved in the project include Morrissey Construction Company, which obtained the necessary permits from the City on Sunnybrook's behalf,[1] Laborers Home Development Corporation, Midwest Region, which upon completion will be the operational partner for the community, EBJJ, LLCC, Sunnybrook's partner in the development, and Edward Hightower, the principal member of Sunnybrook, LP (Doc. 24-2). Sunnybrook argues that, along with its partners, it has planned the Sunnybrook development for two years. Now, because of Defendants' discriminatory actions, it has lost $500,000 in funding, has endured extensive delays in

---

[1] Sunnybrook contends that this is a routine practice in the construction industry and expressly permitted by the Alton City Code (Doc. 24). *See* Alton City Code, § 11-2-2 ("DEVELOPER: The owner of land proposed to be developed, subdivided, or redeveloped or the developer's representative who is responsible for any undertaking that requires and/or approval under these regulations.").

the construction process, and has incurred administrative expenses and legal fees.

In reply, Defendants aver that Sunnybrook is lying to the Court and playing a corporate shell game to pursue a lawsuit where it lacks standing (Doc. 27). Defendants direct the Court to the Illinois Secretary of State's online database, which shows that Sunnybrook LP was not formed until May 30, 2018. Thus, it could not have conducted all of the activities alleged when it did not legally exist at that time.

Sunnybrook has moved to strike Defendants' reply brief or, alternatively, grant Sunnybrook leave to file a sur-reply (Doc. 28). While acknowledging it could have crafted more artful references to itself as "Plaintiff's predecessor" and/or Plaintiff's "founding partner," Sunnybrook argues that it is the developer of the Sunnybrook project. It also notes that the majority of the conduct complained of occurred after the LP's formation and, to the extent the discrimination occurred prior to the official formation, it was targeted toward Sunnybrook's predecessor and founding partners. In any event, it argues, Defendants stated no exceptional circumstance to justify filing a reply brief and raising new arguments related to the timing of Sunnybrook's formation with the State of Illinois.

Motions to strike are generally disfavored. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). For this reason, this Court and others have held that a party must show prejudice to succeed on a motion to strike. *See, e.g.*, *Anderson v. Bd. of Educ. of Chi.*, 169 F. Supp. 2d 864, 867 (N.D. Ill. 2001); *see also Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Prejudice exists where the allegation confuses the issues or is so lengthy and complex that it puts an undue burden on the opposing

party. *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. Ill. 1997).

Here, Sunnybrook used its motion to strike as an opportunity to file a sur-reply in response to Defendants' allegations. In other words, Sunnybrook is not prejudiced by Defendants' reply, as it was able to respond to Defendants' arguments regarding the timing of its filings with the Illinois Secretary of State. Accordingly, the Court denies Sunnybrook's motion to strike (Doc. 28). To the extent Sunnybrook seeks leave to file a sur-reply, the motion to strike served that purpose. That request is also denied.

Turning to the merits of Defendants' argument, under Rule 17, the Court is "concerned only with whether an action can be maintained in the plaintiff's name." *Rawoof*, 521 F.3d at 756. Here, Sunnybrook LP certainly can maintain an action for any conduct that occurred after its legal formation. Thus, it is a proper party in this case. Furthermore, to the extent any claims belong to Sunnybrook's predecessors, Rule 17(a)(3) provides:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Therefore, *if* any claims belong to another party, that party should have the opportunity to join or be substituted into this action. The Court finds no reason to dismiss the entire case on this ground.

## II.   Abstention

Defendants also contend the Court should abstain from hearing this case due to the state court litigation. Defendants list several abstention doctrines but only discuss

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Under *Colorado River*, federal courts may defer to a "concurrent state proceeding" as a matter of "wise judicial administration." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497 (7th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 818). "The doctrine comes into play when parallel state court and federal court lawsuits are pending between the same parties." *Id.*

Abstention from the exercise of federal jurisdiction should only occur in exceptional circumstances. *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2006). "The 'clearest of justifications' must be present for a federal court to stay a proceeding pending completion of a state action. *Id.* (quoting *Colorado River*, 424 U.S. at 819).

To determine whether a stay is appropriate under *Colorado River*, the court must first determine whether the concurrent actions are actually parallel. *Id.* Suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 752. "In essence, the question is whether there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Adkins*, 644 F.3d at 499 (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)). "Any doubt regarding the parallel nature of the [state] suit should be resolved in favor of exercising jurisdiction." *Id.* (quoting *AAR International, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 520 (7th Cir. 2001)). If the suits are parallel, then the court must consider a number of factors that might demonstrate the existence of "exceptional circumstances." *Tyrer*, 456 F.3d at 751.

In the Madison County action, Sunnybrook asserted a claim for declaratory judgment and preliminary injunction related to the City of Alton's requirement that a

subdivision plat be filed and approved before a building permit will be issued (Count I); a request for a temporary restraining order finding that it need not file a plat for the Sunnybrook project (Count II); a request for a writ of mandamus compelling the City of Alton to determine that the Sunnybrook project is permitted under the Alton City Code's R-4 Multiple Family zoning district and meets all requirements for the issuance of a building permit (Count III); and a request for a preliminary injunction enjoining the City of Alton from creating or imposing any additional procedural requirements unsupported by its City Code or otherwise frustrating Sunnybrook's ability to receive additional funding for the project (Count IV) (Doc. 18-9). Essentially, Sunnybrook has asked the state court to order the City of Alton to issue a building permit for the development.

In this case, however, Sunnybrook is asserting violations of the Fair Housing Act and its civil rights under 42 U.S.C. §§ 1981, 1982, and 1983, as well as the Equal Protection Clause of the Fourteenth Amendment (Doc. 7). While the factual allegations in the two cases overlap, the state court litigation will not dispose of the federal claims in this case. Even if the state court were to grant all relief sought by Sunnybrook, its claims that Defendants violated its civil and statutory rights, causing a lengthy delay in the project, a loss of $500,000 in funding, and an additional $500,000 in costs would still remain unresolved here. Because the two suits are not parallel, abstention is not appropriate.

## Conclusion

For these reasons, the Motion to Dismiss filed by Defendants City of Alton and Brant Walker (Doc. 17) is **DENIED**. The Motion to Strike filed Plaintiff Sunnybrook LP (Doc. 28) is also **DENIED**. The previously imposed stay on discovery is hereby **LIFTED**,

and the parties are **DIRECTED** to submit an amended Proposed Scheduling and Discovery Order to the undersigned on or before November 26, 2019.

    **IT IS SO ORDERED.**

    DATED:   November 13, 2019

                                                     **NANCY J. ROSENSTENGEL**
                                                   **Chief U.S. District Judge**